STATE OF CONNECTICUT *v.* STEVEN H. HUFFORD
(12954)

PETERS, C. J., HEALEY, GLASS, COVELLO, and HULL, Js.

Argued October 1—decision released December 1, 1987

*Jon L. Schoenhorn,* with whom was *Dennis P. McMahon,* for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom were *James G. Clark,* assistant state's attorney,

and, on the brief, *Rosita Creamer,* assistant state's attorney, for the appellee (state).

HULL, J. The defendant was charged by substitute information with the crimes of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3),[1] sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1),[2] and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (C) and/or (a) (2).[3] After a jury

[1] General Statutes (Rev. to 1983) § 53a-71, as amended by Public Acts 1983, No. 83-396, provides in part: "SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age, or (2) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual intercourse, or (3) physically helpless, or (4) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (5) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person."

[2] "[General Statutes] Sec. 53a-72a. SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person whom such person knows to be related to such person within any of the degrees of kindred specified in section 46b-21."

[3] "[General Statutes] Sec. 53a-73a. SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact, or (C) physically helpless, or (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (E) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person; or (2) such person subjects another person to sexual contact without such other person's consent, or (3) such person engages in sexual contact with an animal or dead body."

trial, the defendant was acquitted of sexual assault in the second degree and found guilty of sexual assault in the third degree and sexual assault in the fourth degree.

On appeal, the defendant claims that: (1) the state failed to prove the defendant guilty beyond a reasonable doubt of sexual assault in the third degree; (2) the state failed to prove the defendant guilty beyond a reasonable doubt of sexual assault in the fourth degree; (3) the trial court erroneously instructed the jury on circumstantial evidence; (4) the trial court erroneously refused to charge the jury on the element of intent necessary for a conviction of sexual assault in the fourth degree; and (5) the defendant's constitutional rights to confrontation and cross-examination of adverse witnesses were violated by the trial court's denial of his motion for disclosure of the complainant's psychiatric records. We find error.

The jury could reasonably have found the following facts. On October 15, 1984, the complainant and her husband, from whom she had filed for divorce, were engaged in an argument, at their East Hartford home,[4] over items allegedly missing from there. When the complainant became very excited and began to hyperventilate, her husband called the police. Upon their arrival with paramedics, her husband told them the complainant had threatened to commit suicide. Although the complainant was crying and upset and frightened, the police and paramedics saw no evidence that she had tried to harm herself. Based on their observations and the information given them by her husband, they decided she should be taken to the hospital for observation. They called Ambulance Service of Manchester and an ambulance responded with two emergency med-

---

[4] At the time of the incident, the complainant and her husband were still living in the same house.

ical technicians, the defendant and Douglas Bearse. The complainant resisted going to the hospital and the police and paramedics decided she should be restrained. The defendant and Bearse tied pillow cases around the complainant's limbs and secured them to the stretcher with tape. She was placed in the ambulance and taken to the Hartford Hospital emergency room. The complainant remained in the hospital, in restraints, for more than two and one-half hours, shouting several times to attract attention to her situation. Eventually she was seen by a psychiatrist and released.

The sexual assault is alleged to have occurred during the ride to the hospital. The facts are in dispute. The complainant testified that during the ride, the defendant unbuttoned her blouse and unzipped her pants, and over her verbal protests fondled her breasts and massaged her vagina. The defendant testified that after the complainant was placed in the ambulance, he took her vital signs, that during the trip, he again took her vital signs, that he noticed that the top two buttons of the complainant's blouse were open and that he buttoned them, and that it was possible that he brushed up against her breast while taking her blood pressure, but did not actually recall doing so. He denied the complainant's assertion that he had intentionally touched her breasts and inserted his fingers in her vagina. Bearse, who was driving the ambulance, testified that he had a partial view of the rear compartment of the vehicle where the defendant and the complainant were, and that he could hear the complainant yelling that she did not want her belongings taken from her. He said he saw the defendant doing paperwork.

I

The defendant's first challenge is to the sufficiency of the evidence to prove beyond a reasonable doubt that he committed sexual assault in the third degree as

charged in count two of the substitute information. He contends that the state presented no evidence that the defendant used force to compel the alleged sexual contact. At the close of the state's case and at the close of all the evidence, the defendant moved for judgment of acquittal on all charges. Both motions were denied.[5]

In considering a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State* v. *Simino,* 200 Conn. 113, 116, 509 A.2d 1039 (1986); *State* v. *Morrill,* 197 Conn. 507, 512, 498 A.2d 76 (1985). In other words, this court must ascertain "whether, viewing the evidence favorably to sustaining the verdict, the trier could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985).

The state was required to prove beyond a reasonable doubt that the defendant used force to compel the alleged sexual contact. General Statutes § 53a-72a (a) (1) (A). General Statutes § 53a-65 (7) (B) defines "use of force" as "use of actual physical force or violence or superior physical strength against the victim." The defendant argues that the state did not prove use of force as that term is defined by the statute. The state

---

[5] The defendant urges us to abolish the waiver rule, under which a defendant may not obtain appellate review of a trial court's denial of his motion for acquittal at the close of the state's case without relinquishing his right to introduce evidence in his own behalf. *State* v. *Simino,* 200 Conn. 113, 118, 509 A.2d 1039 (1986); *State* v. *Rutan,* 194 Conn. 438, 440, 479 A.2d 1209 (1984). Although we acknowledge that the waiver rule has come under attack in recent years; see *State* v. *Rutan,* supra, 440–44; we decline, at this time, to overrule it because to do so is not required for disposition of this appeal.

counters that by partially undressing the complainant and touching her, the defendant exerted all the force necessary to compel the complainant's submission to sexual contact. We agree with the defendant.

Penal statutes are to be construed strictly; *State* v. *Paradise,* 189 Conn. 346, 352, 456 A.2d 305 (1983); and not extended by implication to create liability that the legislature did not purport to create. *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983). Words and phrases, however, are to be understood according to the commonly approved usage of the language; General Statutes § 1-1 (a); and words used in a criminal statute should not be accorded the narrowest technical meaning in disregard of their context and in frustration of the obvious legislative intent. *State* v. *Roque,* supra. We have previously acknowledged that the statutory definition of "use of force" is clear and that "it contains no words not commonly used which might not be understood in their ordinary meaning." *State* v. *Kish,* 186 Conn. 757, 766, 443 A.2d 1274 (1982).

This court has not heretofore considered any case in which mere touching was alleged to be the force necessary to a sexual assault. Rather, where we have found use of force proven, the evidence demonstrated either violence or some other form of physical coercion. See, e.g., *State* v. *Monk,* 198 Conn. 430, 503 A.2d 591 (1986) (defendant forced victim into car, struggled with her, choked her and sexually assaulted her while another held her down); *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985) (defendant strangled victim into unconsciousness); *State* v. *Rothenberg,* 195 Conn. 253, 487 A.2d 545 (1985) (defendant took victim by the arms and pulled her, struggling, to the couch); *State* v. *Green,* 194 Conn. 258, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985); (attempted sexual assault; when victim tried to get up,

defendant held her down and struck her); *State* v. *Kish,* supra (defendant grabbed victim's wrists and dragged her into bedroom).

The evidence adduced at the trial of this case demonstrated that the defendant had no need to exert force to effect the sexual contact. The complainant had been legally rendered immobile for transport to the hospital and the defendant had only to open her blouse and pants to commit the sexual assault. We are unpersuaded by the state's argument that these actions constituted force. In this case, there was mere touching. Neither violence, nor physical coercion, nor use of superior strength was necessary to assault this complainant sexually. We decline to stretch the ordinary meaning of "use of force" to fit this particular case. We, therefore, hold that the defendant did not use force as contemplated by General Statutes § 53a-65 (7) (B), and that the evidence does not support the jury's verdict of guilty of sexual assault in the third degree.

Our holding here is supported by a comparison of sexual assault in the third degree; General Statutes § 53a-72a (a) (1) (A); with sexual assault in the fourth degree. General Statutes § 53a-73a (a) (1) (C) and (a) (2). We agree with the state that these are separate crimes but disagree with the state's assertion that in this factual setting, the defendant can be found guilty of both. While both statutes proscribe nonconsensual sexual conduct, sexual assault in the third degree by use of force contemplates a will overborne by physical coercion, whereas sexual assault in the fourth degree addresses subjection to sexual contact upon a physically helpless person or without the victim's consent under circumstances not necessarily requiring physical force.

Prior to 1975, sexual contact by forcible compulsion and sexual contact with a person unable to consent by

reason of being physically helpless were both considered sexual contact in the first degree and designated a class C felony. General Statutes (Rev. to 1975) § 53a-78. Sexual contact with a person without consent was sexual contact in the third degree and designated a class A misdemeanor. General Statutes (Rev. to 1975) § 53a-80. These statutes were repealed by Public Acts 1975, No. 75-619. In their place, the legislature enacted General Statutes § 53a-72a, a class D felony, which encompasses sexual contact compelled by use of force, and General Statutes § 53a-73a, a class A misdemeanor, which includes sexual contact with a physically helpless person and sexual contact with a nonconsenting person. It is clear that the legislature sought to separate the offenses originally contained in § 53a-78 and to impose greater criminal liability upon a defendant who uses force, thereby risking additional harm to the sexual assault victim, than upon the defendant who takes advantage of a situation where the only touching necessary is that constituting the sexual contact. See *State* v. *Rodgers,* supra, 60–61. Were we to adopt the interpretation of "use of force" urged by the state to include mere touching, we would eradicate the distinction between sexual assault in the third degree and sexual assault in the fourth degree.

Finally, we do not lightly upset a jury verdict. Although whether there was a use of force is ordinarily a question of fact for the trier; *State* v. *Monk,* supra, 433; *State* v. *Kish,* supra, 766–67; a jury may not resort to speculation or conjecture. *State* v. *Scielzo,* 190 Conn. 191, 196–97, 460 A.2d 951 (1983). " 'Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot "constitutionally stand," as it is violative of the fourteenth amendment [to the United States constitution] . . . .' " *State* v. *Scielzo,* supra; see *Jackson* v.

*Virginia,* 443 U.S. 307, 317–18, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979).

It was the state's burden to prove beyond a reasonable doubt every element of sexual assault in the third degree. We hold that the record discloses no evidence upon which the jury could reasonably have concluded that the defendant used force to compel the complainant to submit to sexual contact. Therefore, no rational trier could have found the defendant guilty of sexual assault in the third degree. Accordingly, we find error. The trial court is directed to render judgment of acquittal on count two of the substitute information.

## II

We consider the defendant's second and fifth claims of error together since they both implicate the validity of his conviction on count three, sexual assault in the fourth degree.

## A

The defendant was charged in the substitute information and bill of particulars with intentionally subjecting the complainant to sexual contact while she was physically helpless and/or without her consent. He asserts that these disjunctively phrased charging documents, coupled with the court's charge to the jury, permitted the jury to convict him without reaching unanimity on the exact crime charged. He further asserts that the state failed to present evidence that the complainant was physically helpless. The state objects that this claim of error is not reviewable because at trial the defendant did not preserve it for appeal. The defendant urges us to review this claim under the

exceptional circumstances doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).[6]

The defendant concedes that he did not object to the disjunctive phrasing in the substitute information or bill of particulars, nor did he except to the court's allegedly erroneous jury instruction. Furthermore, the defendant requested that the court give the jury charge of which he now complains. When the jury returned its verdict, the defendant failed to request a poll of the jury to determine under which subsection of General Statutes § 53a-73a he was convicted.

In his motion for judgment of acquittal at the close of the state's case, the defendant argued that the state had failed to present any evidence that the complainant was physically helpless. At the close of all the evidence, the defendant renewed his motion. The motion was denied at both junctures.

Claims of error not preserved at trial are nonetheless reviewable "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70.

According to the defendant, his constitutional rights to proper notice, to prepare an effective defense and to a unanimous jury verdict have been violated and he is, therefore, entitled to review under *Evans.* We find no constitutional error arising from the disjunctively phrased substitute information and bill of particulars.

---

[6] The defendant argues that this claim of error is reviewable under the doctrine of plain error. Practice Book § 4185. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). The error claimed by the defendant "is not so obvious or so egregious as to constitute plain error." *State* v. *Franko,* 199 Conn. 481, 489–90 n.10, 508 A.2d 22 (1986).

The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him with sufficient precision to enable him to prepare his defense, to avoid prejudicial surprise and to plead his conviction or acquittal in bar of any future prosecution. *State* v. *Scognamiglio*, 202 Conn. 18, 22, 519 A.2d 607 (1987); *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986). An information which charges two or more separate offenses in the alternative is fatally defective because of its failure adequately to apprise the defendant of the specific charge against him. *State* v. *Edwards,* 201 Conn. 125, 130, 513 A.2d 669 (1986); *State* v. *Eason,* 192 Conn. 37, 40, 470 A.2d 688 (1984). No such vulnerability attaches, however, to an information that charges the defendant with alternate methods of committing one substantive crime. That was the case here with the charge of sexual assault in the fourth degree. The defendant's conviction under either theory of liability would preclude subsequent prosecution for the same offense. The defendant's defense was a simple denial that the incident had ever occurred. He has pointed to no support in the record, nor can any be found, that he was prejudiced or unfairly surprised by the charging documents. Nor does he assert that he would have changed his defense had the information charged him with each alternative in separate counts or in the conjunctive. Thus, the defendant has not established an infringement of his constitutional rights. See *State* v. *Franko,* supra.

The defendant properly preserved his challenge to the sufficiency of the evidence to convict him of sexual assault in the fourth degree by timely excepting to the court's denial of his motion for judgment of acquittal. See *State* v. *Duhan,* 194 Conn. 347, 354, 481 A.2d 48 (1984). We agree with the defendant that the state

presented no evidence that the complainant was physically helpless within the meaning of the statute.

General Statutes § 53a-65 (6) defines "physically helpless" as "unconscious or for any other reason . . . physically unable to communicate unwillingness to an act." This language contains no terms not commonly used which might not be understood in their ordinary meaning. Since the complainant was not unconscious, we are concerned with whether she was physically able to communicate her unwillingness to the act. The defendant argues that because the complainant, according to her own testimony, was able to protest verbally, she was not physically helpless. The state, relying on *People* v. *Teicher,* 52 N.Y.2d 638, 422 N.E.2d 506, 439 N.Y.S.2d 846 (1981), responds that the complainant was physically helpless by virtue of her inability to move away from the defendant notwithstanding her ability to speak. We find *Teicher* inapposite to the case before us. In *Teicher,* the defendant, a dentist, was convicted of sexually abusing a police decoy whom he had drugged. The Court of Appeals upheld the conviction over the defendant's contention that the victim was not physically helpless because she was mentally aware although unable to control her body. Significantly, that court pointed out that the jury heard evidence that the victim was lifted to a standing position by the defendant, and that, under the circumstances, "there may be a decrease in the cerebral blood flow which could result in dizzyness or even unconsciousness," and that chest compression could compound the result, thereby leaving the question of the state of the victim's helplessness for the jury to decide. Id., 648. We find that these facts sufficiently distinguish *Teicher* from the present case.

"Communicate" means "2 a: to make known: inform a person of . . . 3 . . . speak, gesticulate . . . to convey information." Webster, Third New International

Dictionary (1986). By her own account, the complainant told the defendant repeatedly to stop touching her, directly conveying her objection to his advances. While this testimony tends to show lack of consent, it contradicts the state's assertion that the complainant was unable to communicate her "unwillingness to an act." The record contains no evidence tending to show that the complainant was physically helpless.

The court instructed the jury that it could find the defendant guilty if it found that the complainant was either physically helpless or had not consented to the sexual contact. The court's submission of the issue of physical helplessness to the jury in light of the state's failure to produce evidence of physical helplessness violated the defendant's constitutional right to be proven guilty beyond a reasonable doubt of all the elements of the crime charged. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Little,* 194 Conn 665, 676, 485 A.2d 913 (1984). The jury returned a general verdict of guilty of sexual assault in the fourth degree. A verdict rendered on a single count charging alternative methods of committing the same crime may be upheld only if there is sufficient evidence to support the verdict as to each alternative charged. *Leary* v. *United States,* 395 U.S. 6, 31–32, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969); *State* v. *Arnold,* 201 Conn. 276, 285, 514 A.2d 330 (1986). Unless there is evidence sufficient to support all alternatives, it would be impossible to determine whether the jury based its decision on an alternative theory of criminal liability for which there was no evidence. *State* v. *Arnold,* supra, 282. Since there is no evidence of physical helplessness as required for a conviction under General Statutes § 53a-73a (a) (1) (C), the verdict must be set aside and the case remanded for a new trial limited to the issue of lack of consent.

B

The defendant's conviction is invalid for another reason. The court erroneously denied the defendant's motion for disclosure of the complainant's psychiatric records, thereby violating the defendant's right to confront and cross-examine the state's key witness against him.

Following the state's direct examination of the complainant, the defendant, out of the jury's presence, introduced the hospital records of the treatment of the complainant on the night of the alleged sexual assault. He also argued his motion for an order to compel the complainant to submit to a psychiatric examination and sought production of her psychiatric records for the purpose of impeaching her credibility. The defendant sought the complainant's records to show that her mental and emotional condition might have impaired her ability at trial or at the time of the occurrence to observe, recollect and narrate the events of the night in question. The court denied the motion, concluding that the defendant had failed to make the requisite showing that the complainant's testimonial capacity was affected by her condition, and that he had failed to demonstrate that denial of the information sought would impair his right to confrontation. The defendant duly excepted to this ruling. He limits his challenge on appeal to the court's denial of access to the psychiatric records.

The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jarzbek,* 204 Conn. 683, 707, 529 A.2d 1245 (1987); *State* v. *Reardon,* 172 Conn. 593, 599–600, 376 A.2d 65 (1977). It is expressly protected by the sixth and fourteenth

amendments to the United States constitution;[7] *Davis* v. *Alaska,* 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Pointer* v. *Texas,* supra; and by article first, § 8, of the Connecticut constitution.[8] *State* v. *Torello,* 103 Conn. 511, 513, 131 A. 429 (1925). The defendant is guaranteed more than an opportunity to confront witnesses physically. *Davis* v. *Alaska,* supra. The right to confrontation secures to the defendant the opportunity to cross-examine witnesses against him; id., 315–16; and "to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness." *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980). The right of cross-examination is not absolute, how-

[7] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The right to confrontation is made obligatory on the states by the fourteenth amendment to the United States constitution. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Reardon,* 172 Conn. 593, 599, 376 A.2d 65 (1977).

[8] The constitution of Connecticut, article first, § 8, provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

ever, and the trial court may, in its discretion, limit the testimony; id., 508; although the court may not so restrict cross-examination as to impair the defendant's right to confrontation and deny him a fair trial. *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). We must determine whether, in denying the defendant access to the complainant's psychiatric records, the trial court prevented the defendant from pursuing a relevant line of inquiry reasonably calculated to elicit facts upon which the jury might logically have decided either to disbelieve the complainant or to discount or discredit her testimony. *Davis* v. *Alaska,* supra. We conclude that the defendant's right to confrontation was impaired. We rest this holding not only on the requirements of the federal constitution, but also on independent and adequate state constitutional grounds. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; see *Michigan* v. *Long,* 463 U.S. 1032, 1041, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *State* v. *Jarzbek,* supra, 707–708.

Where, as here, the records sought are privileged,[9] the witness' right to privacy must be weighed against the criminal defendant's right to bring to the jury's attention facts affecting the witness' credibility. *State* v. *Storlazzi,* 191 Conn. 453, 458, 464 A.2d 829 (1983). "The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material 'especially probative of the ability to "comprehend, know and correctly relate the truth" '"; *United States* v. *Lindstrom,* 698 F.2d 1154, 1165–66 (11th Cir. 1983); so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation. As in the case of admissibility of such records, access to records bearing on 'the mental unsoundness of a witness (i.e.,

---

[9] General Statutes § 52-146e protects such records from disclosure.

relating to a trait importing in itself a defective power of observation, recollection or communication), at or around the time of trial or of the occurrence about which he is to testify'; *State* v. *Piskorski,* [177 Conn. 677, 736, 499 A.2d 866 (1979)]; should be granted to the defendant. And as in the case of admissibility of such records, however, access to 'such [records] must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it'; id., 737; and to weigh that value against the interest in confidentiality of the records. Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." *State* v. *Storlazzi,* supra, 459.

The patient-psychiatrist privilege must defer to the defendant's interest in determining whether there is substantial evidence that the mental condition of a vital prosecution witness might reasonably affect that witness' credibility. *State* v. *Pierson,* 201 Conn. 211, 227, 514 A.2d 724 (1986); *State* v. *Cardinal,* 194 Conn. 114, 118–19, 478 A.2d 610 (1984). "If the testimony of such a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to discover any infirmities that may cast serious doubt upon its truthfulness." *State* v. *Pierson,* supra. We have established procedures to reconcile the patient-psychiatrist privilege with the defendant's right to confrontation where, as here, it is not certain that such privileged information exists; id., 228; cf. *State* v. *Bruno,* 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986); *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984); or where psychiatric records were known to exist.

"Where there is any reasonable basis in the evidence for believing that psychiatric personnel may have infor-

mation relating to the mental condition of a witness that might affect his testimony, the court must conduct a voir dire of the person who may possess such information in order to discover whether it would be admissible. This preliminary inquiry may be conducted only with the consent of the witness sought to be impeached, but, unless such consent is forthcoming, the testimony of that witness must be stricken. The voir dire for the purpose of determining the existence of such impeachment evidence must be conducted in the courtroom in the presence of the defendant and his counsel, who shall be allowed to participate fully in the proceeding. The court may, however, exclude the public from the courtroom pursuant to Practice Book § 895. See *Press-Enterprise Co.* v. *Superior Court of California for the County of Riverside,* 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986). If, after conducting such a voir dire, the court decides that some of the evidence elicited is admissible at trial, the defendant shall be permitted to use it, but the remaining confidential communications shall be sealed. If no admissible impeaching evidence is discovered, the entire record of the proceeding shall be sealed for possible appellate review." *State* v. *Pierson,* supra, 228.

In this case, the defendant made the requisite showing that there were reasonable grounds to believe that there were psychiatric records or information pertaining to the complainant's mental condition bearing on her testimonial capacity and reliability as a witness. During argument on his motion for disclosure, the defendant introduced the Hartford Hospital emergency room record and emergency department nursing notes pertaining to the complainant's condition on the night of the incident. The nursing notes described her as uncooperative and unwilling to answer questions or talk rationally. While her mental status was described in the emergency room record as "calm now, very hys-

terical, not suicidal, not [homicidal]," she was diagnosed as having a social problem and histrionic personality disorder. She was advised to "[c]all [a health maintenance organization] for appointment for help/support (Mental Health Clinic)." In light of these facts, the trial court should have granted the defendant's motion for disclosure to enable him to discover whether the complainant had indeed sought counseling and whether there existed any records of such treatment. Following discovery, the court should have conducted a voir dire to ascertain whether the records contained any otherwise privileged information admissible for impeachment purposes. Whether such evidence exists cannot be determined without a voir dire. *State* v. *Pierson,* supra, 229. The fact that the defendant did not ask specifically for a voir dire at trial does not, as the state contends, constitute a barrier to the court conducting such a proceeding. Where, as here, the requisite showing has been made that there are reasonable grounds for believing such records exist, the defendant should be permitted to discover them. After they have been obtained, the court should then conduct a voir dire as to their admissibility.

The procedures set forth above are to be applied to the proceedings on remand. Should the defendant's efforts to discover the records fail, i.e., no such records exist, then there would be no need for a voir dire and a new trial should proceed in accordance with our decision in part II A of this opinion. Should such records exist and the complainant refuse, however, to consent to waive her privilege as to a preliminary inquiry into admissibility, her testimony must be stricken. Since her testimony was the only evidence that the crime had been committed, judgment of acquittal would have to be rendered due to insufficiency of the evidence. Should she consent and the court find no impeachment evidence, the entire record of the proceeding shall be

sealed for possible appellate review, and a new trial shall proceed in accordance with our decision in part II A.

### III

Finally, the defendant challenges the trial court's instructions to the jury on circumstantial evidence and on sexual assault in the fourth degree.

### A

The defendant claims that the court's instructions on circumstantial evidence erroneously diluted the state's burden of proof to establish his guilt beyond a reasonable doubt and instead permitted the jury to find him guilty by a preponderance of the evidence. The defendant did not file a request to charge with the trial court on circumstantial evidence, nor did he except to the charge. Ordinarily, we decline to review claims of error not properly preserved for appeal; Practice Book § 4185; but because the claim implicates the defendant's constitutional right to have the state prove him guilty beyond a reasonable doubt, we will review it. *In re Winship*, supra, 361; *State* v. *Miller*, 202 Conn. 463, 489–90, 522 A.2d 249 (1987); *State* v. *Whelan*, 200 Conn 743, 755–56, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Evans*, supra.

In its general charge on circumstantial evidence, the trial court instructed the jury that "proof beyond a reasonable doubt does not mean that you must have direct evidence supporting each and every element of the charge, nor does it mean that you have direct evidence of every fact involved." The court explained that the rule of circumstantial evidence involves the offering of evidence from facts, "from which you are asked to infer the existence of another fact or of a set of facts. Such an inference may be made, providing two elements in

the application of the rule are satisfied. The first element is that the fact from which you are asked to draw the inference, which fact we'll call the underlying fact, has itself been proven in this trial. The second element that must be satisfied is that the inference asked to be drawn from the underlying fact is not only logical and reasonable, but is strong enough so that it is more probable than not, that the fact to be inferred is true. To sum up, it is your right to draw inferences if you conclude that the facts you find proved, reasonably establish other facts by reason and in logic, and that they are not the result of speculation or guesswork or surmise."

The defendant argues that this instruction permitted the jury to infer his intent and purpose in committing the crime by a preponderance of the evidence.

We have had many opportunities to consider jury instructions on circumstantial evidence that were substantially similar to the charge in this case. *State* v. *Robinson,* 204 Conn. 207, 527 A.2d 694 (1987); *State* v. *Miller,* supra; *State* v. *Smith,* 201 Conn. 659, 519 A.2d 26 (1986); *State* v. *Whelan,* supra; *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985); *State* v. *Reddick,* 197 Conn. 115, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). While we have consistently held such a charge to be erroneous, such error is not reversible unless it can be shown that it was reasonably possible that the jury was "misled [by the charge] to believe that they were to apply any standard other than that of 'beyond a reasonable doubt' in determining the guilt of the accused." *State* v. *Miller,* supra, 491–92; *State* v. *Robinson,* supra, 210–11; *State* v. *Whelan,* supra, 756–57.

The standard of our review turns on whether the principal disputed issue is one that is ordinarily proven by circumstantial evidence. If the principal disputed

issue is intent, which is typically proven by circumstantial evidence, " 'we will closely scrutinize the court's instructions' on circumstantial evidence, in isolation from the remainder of the charge, to determine whether the court misled the jury as to the state's burden of proof. *State* v. *Mullings,* [202 Conn. 1, 12, 519 A.2d 58 (1987)]; *State* v. *Whelan,* supra, 757; *State* v. *Rodgers,* [supra, 59]; *State* v. *Farrar,* 7 Conn. App. 149, 155, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986)." *State* v. *Robinson,* supra, 210. Otherwise, we review the instruction in the context of the charge as a whole to ascertain whether it is reasonably possible that the jury was misled by an erroneous explanation of the use of circumstantial evidence. Id.

Contrary to the defendant's assertion, the principal disputed issue in this case was not intent, but the credibility of the complainant. The defendant denied that he committed the crimes charged. The evidence produced to prove that the crime was committed was the direct testimony of the complainant. This evidence was contradicted by the direct testimony of the defendant and his version of the facts was corroborated by the testimony of Bearse, the ambulance driver. On this record, it is clear that the jury's verdict depended not upon circumstantial evidence, but upon the credit it gave to the direct testimony of the complainant.

Our examination of the jury charge as a whole discloses that the court repeatedly admonished the jury that they must find the existence of each essential element of each crime beyond a reasonable doubt. Furthermore, the court adequately instructed the jury on the presumption of innocence and reasonable doubt. As to the intent required for sexual assault in the fourth degree, the court instructed the jury that they could find it by circumstantial evidence, but that it must be found beyond a reasonable doubt. Accordingly, we find that the erroneous circumstantial evidence instruction

could not reasonably have misled the jury as to the state's burden of proof and was thus harmless beyond a reasonable doubt. *State* v. *Smith,* supra, 672–73; see *Rose* v. *Clark,* 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986).

### B

The defendant also claims that the trial court erred in failing to instruct the jury that intentional conduct was necessary to convict him of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2). We find this claim to be without merit.

Subsection (a) (1) of General Statutes § 53a-73a contains an element of specific intent not repeated in subsection (a) (2). In its charge to the jury on subsection (a) (2), the court merely recited the language of the statute and did not apprise the jury that conviction under that subsection requires a finding that the defendant intended to subject the complainant to sexual contact. The defendant argues that, even if specific intent is not required under subsection (a) (2), his testimony that he may have inadvertently touched the complainant's breast while taking her blood pressure constituted evidence sufficient to require an instruction on general intent to commit the crime of sexual assault in the fourth degree in this manner.

"[T]he fundamental principle that a criminal act must be volitional does not mean that a charge to the jury that omits reference to this principle is constitutionally defective where the evidence at trial contains no suggestion that the defendant's conduct was involuntary and he has made no such claim either in the trial court or on appeal." *State* v. *Pierson,* supra, 217.

We need not address the defendant's arguments as to the type of intent required for sexual assault on a

person without her consent. Viewing as a whole the court's instructions on the element of sexual contact, it is not reasonably possible that the jury was misled into believing that the defendant could be guilty of the crime by virtue of inadvertent or accidental acts. Consistent with the statutory definition of sexual contact; General Statutes § 53a-65 (3); the court, in its charge on sexual assault in the third degree, informed the jury that any sexual contact would have to have been for the sexual gratification of the defendant. This instruction was repeated in the instructions on sexual assault in the fourth degree on a physically helpless person. Finally, in its instructions on sexual assault in the fourth degree without consent, the court referred the jury to its prior explanations of sexual contact. In light of these instructions, we conclude that the jury could not reasonably have been misled to believe that unintentional conduct could form the basis of a violation of General Statutes § 53a-73a (a) (2).

There is error, the judgment of guilty of sexual assault in the third degree is set aside and the trial court is ordered to render judgment of acquittal, and the judgment of guilty of sexual assault in the fourth degree is set aside and the case is remanded to the trial court for further proceedings consistent with part II of this opinion.

In this opinion the other justices concurred.