STATE OF CONNECTICUT *v.* RICHARD FOURTIN
(AC 29899)

Bishop, Lavine and Peters, Js.

Argued September 9—officially released November 17, 2009

*Robert E. Byron,* special public defender, for the appellant (defendant).

*Susann E. Gill,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Cornelius P. Kelly* and *Timothy J. Sugrue,* senior assistant state's attorneys, for the appellee (state).

*Opinion*

PETERS, J. The dispositive issue in this criminal appeal is whether the state met its burden of proving that the defendant sexually assaulted a person who is "physically helpless." General Statutes § 53a-65 (6) defines "physically helpless" as "a person [who] is unconscious or for any other reason is physically unable to communicate unwillingness to an act." The complainant in this case is a young woman who suffers from

multiple significant disabilities, including an inability to communicate verbally, although she is able to express herself in other ways. The defendant has appealed from the judgment of the trial court accepting a jury verdict finding him guilty of attempt to commit sexual assault in the second degree and sexual assault in the fourth degree. We reverse the judgment of the trial court.

In an amended substitute information dated January 16, 2008, the state charged the defendant, Richard Fourtin, with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3),[1] attempt to commit sexual assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2)[2] and 53a-71 (a) (3), and sexual assault in the fourth degree in violation of General Statutes (Rev. to 2005) § 53a-73a (a) (1) (C).[3] Each of these crimes requires proof beyond a reasonable doubt that the alleged victim was physically helpless as defined in § 53a-65 (6).[4] The jury found the defendant guilty of the second and third charges. The defendant has appealed from the judgment of the trial court sentencing him to eleven years of imprisonment, execution suspended after six years, with twenty-five years of probation and ten years of sex offender registration.

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (3) such other person is physically helpless . . . ."

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes (Rev. to 2005) § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is . . . (C) physically helpless . . . ."

[4] General Statutes § 53a-65 (6) provides: " 'Physically helpless' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act."

The jury reasonably could have credited the testimony of the state's witnesses to make the following findings of fact. In February, 2006, the twenty-five year old complainant lived in an apartment complex with her mother. The defendant, who was the boyfriend of the complainant's mother, lived nearby.[5] He frequently assisted the mother in caring for the complainant. The complainant got along with him.

The complainant is a woman with significant disabilities that affect the manner in which she interacts with others. She has cerebral palsy, mental retardation and hydrocephalus. She cannot walk and needs assistance in performing the activities of daily living. She is nonverbal but communicates with others by gesturing and vocalizing and through the use of a communication board. To manifest her displeasure, she can kick, bite and scratch. The complainant can also vocalize her feelings by groaning or screeching.

In 2006, the complainant was attending an adult day care program for men and women who are physically, emotionally or mentally disabled. Deacon Raymond Chervenak was a staff member at the day care program with whom the complainant regularly communicated about her interest in sports. On February 23, 2006, Chervenak observed that the complainant looked "aggravated" and "scared." In response to Chervenak's inquiry, the complainant, by means of appropriate gestures[6] and the use of a communication board, made him aware that the defendant had sexually assaulted her at her home. In similar fashion, the complainant repeated this accusation to Frances Hernandez, the

[5] Although the defendant was arrested in 2006, his trial was postponed because he was found incompetent to stand trial at that time. The trial commenced two years later, when he was found to have been restored to competency after a period of commitment to Connecticut Valley Hospital.

[6] She pointed to her mouth and then to Chervenak's crotch, and to her chest area and then to her pubic area.

supervisor of the adult program, by pointing to her own body parts and Chervenak's body parts. A subsequent medical examination disclosed physical symptoms consistent with the complainant's report that she had been sexually assaulted.

The defendant does not contest the sufficiency of this evidence to establish the fact that he had sexual contact with the complainant. On appeal, he contends instead, as he did at trial, that the state failed to prove, beyond a reasonable doubt, that the complainant's physical and mental limitations at the time of the alleged assault rendered her "physically helpless" as that phrase is defined by § 53a-65 (6).[7]

Our review of the defendant's claim of evidentiary insufficiency is governed by a well established two-part test. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State v. Ovechka*, 292 Conn. 533, 540–41, 975 A.2d 1 (2009).

---

[7] In addition, in the defendant's appellate brief, he maintained that the court improperly relied on the doctrine of constancy of accusation in admitting the testimony of Chervenak and Hernandez into evidence. At oral argument in this court, however, the defendant abandoned this unpreserved claim of error. We therefore need not address its merits.

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [Finally], in responding to a claim of evidentiary insufficiency . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 152–53, 976 A.2d 678 (2009).

The only issue raised by the defendant's appeal is whether the state adduced sufficient evidence at trial to prove that the complainant's disabilities rendered her "physically helpless." The state has not alleged that, at the time when the defendant assaulted the complainant, she was unconscious, intoxicated, asleep or for some other reason unable to communicate nonverbally, such as by kicking, scratching and screeching. The defendant maintains, therefore, that, even viewing the evidence at trial in favor of the state, the record does not establish beyond a reasonable doubt that the complainant was "physically unable to communicate [her] unwillingness to an act," as § 53a-65 (6) requires. We agree with the defendant.

Our Supreme Court analyzed this statutory language in *State* v. *Hufford*, 205 Conn. 386, 395–99, 533 A.2d 866 (1987). In *Hufford*, the alleged victim of a sexual assault had been physically restrained by paramedics who were transporting her to a hospital for observation. While so restrained, and over her vociferous verbal protests, she allegedly was inappropriately touched by one of the paramedics. The court observed that, "[s]ince the complainant was not unconscious, we are concerned with whether she was physically able to communicate her unwillingness to the [sexual contact]." Id., 398. Rejecting the state's contention that "the complainant was physically helpless by virtue of her inability to move away from the defendant"; id.; the *Hufford* court held that the complainant's own testimony that she repeatedly had told the defendant to stop touching her definitively contradicted the state's assertion that she was unable to communicate her "unwillingness to an act." (Internal quotation marks omitted.) Id., 399.

In light of *Hufford*, the crucial question for us to decide in this case is whether the state established that the complainant was physically unable to communicate her lack of consent to her assault by the defendant.[8] In considering the significance of the evidence of the complainant's mental and physical limitations, we note that the state elected not to proceed with a charge, pursuant to §§ 53a-71 (a) (2) and 53a-73a (a)(1)(B), that the defendant had engaged in sexual intercourse with another person who is "mentally defective to the extent that such other person is unable to consent to such sexual intercourse . . . ." The state's choice of charges to pursue was, of course, a matter within its sole discretion. Nonetheless, to ascertain what the legislature

---

[8] We decline the state's invitation to limit *Hufford*'s holding because, in the state's view, our Supreme Court misread a New York case that it cited in reaching its decision.

meant by "physically helpless," we may look for guidance to the provisions of other statutes relating to the same subject matter. See *In re Ralph M.*, 211 Conn. 289, 304, 559 A.2d 179 (1989). At the least, this statutory juxtaposition demonstrates that proof of mental deficits does not establish "physical helplessness" if the alleged victim had the ability to communicate her lack of consent.

The state maintains that, in this case, it presented sufficient evidence to cast doubt on the complainant's ability to communicate so as to make this issue a jury question. One of the state's witnesses, James Bovieno, testified categorically, but without elaboration, that she was noncommunicative. Bovieno was the emergency room physician who examined the complainant for physical manifestations of a sexual assault. In addition, the defendant's witness, Elenita Espina, an obstetrician gynecologist who provided care to the complainant, testified that she was not able to communicate with her.[9] Evidence of these physicians' inability to communicate with the complainant during a medical examination is not, however, probative of the complainant's inability to communicate with the defendant, who had assisted in her care in her home for many years.

All the other witnesses testified that, sometimes with the aid of a communication board[10] and at other times, with appropriate gestures, the complainant was able to make herself understood. Witnesses testified about the "temper" of the complainant and her concomitant ability to make her displeasure known through nonverbal means, using gestures, physical aggression and screeching and groaning sounds. Notably, the alleged sexual assault in this case came to light only because

[9] Espina did not testify about the extent of her relationship or familiarity with the complainant.

[10] No evidence was offered at trial to establish whether the complainant had access to a communication board at the time of the alleged assault.

the complainant was able to communicate her distress to Chervenak. His testimony squarely contradicts the state's assertion that the complainant was unable to transmit a message to the intended recipient with sufficient clarity to be called "communication."[11]

We recognize that all this evidence casts only an indirect light on the specific question that the jury had to resolve, which is whether the complainant could physically communicate her lack of consent to sexual intercourse at the time of the alleged assault, which is how § 53a-65 (6) defines the crime with which the defendant was charged. Given the uncontradicted evidence in the record that the complainant could communicate using various nonverbal methods, including screeching, biting, kicking and scratching, and the failure of the state to present any evidence probative of whether the complainant was unable to use these forms of communication at the time of the alleged assault, no reasonable jury could have concluded that she was physically helpless as defined by § 53a-65 (6).

Finally, the state relies on several out-of-state cases that, interpreting statutes similar to our own, concluded that the victims therein portrayed were physically helpless. We do not find these cases persuasive.

The state cites *Dabney* v. *State*, 326 Ark. 382, 930 S.W.2d 360 (1996), in which a fifty-three year old blind woman was found to be "physically helpless," although she was able to "grunt, raise her hand, and shake her head from side to side." Id., 384. In addition, however, the victim's ability to perceive and to comprehend her surroundings was so limited that a police detective who

---

[11] The state questions the complainant's communication skills because, in the courtroom, she could testify only by using adaptive equipment. Widely viewed television programs featuring Stephen Hawking, the celebrated author of A Brief History of Time, demonstrate that someone cannot be described as noncommunicative even though he suffers from a disease that requires him to communicate by the use of a computer system.

attempted to interview the victim after the incident testified that she was unable to understand or to respond to most of her questions. The officer testified: "I think the only time I felt she really understood what I said is when I said, 'Shirley do you want to go back to bed.' " Id. That description does not fit the present case.

The state also relies on *State* v. *Atkins*, 193 N.C. App. 200, 666 S.E.2d 809 (2008), review denied, 363 N.C. 130, 673 S.E.2d 364 (2009), which upheld a conviction for sexual assault of a woman, who, because of her advanced age of eighty-three and severe arthritis, would not have had the physical ability to escape her attacker. The relevant North Carolina statute describes a victim of a sexual assault as "physically helpless" if the victim is either "physically unable to resist an act of vaginal intercourse or a sexual act or communicate unwillingness to submit to an act of vaginal intercourse or a sexual act." N.C. Gen. Stat. Ann. § 14-27.1 (3) (LexisNexis 2007). The court affirmed the defendant's conviction on the basis of the jury's finding that the victim was not able actively to oppose or to resist her attacker. Because our statute is different, that case does not provide support for the state's position.

Finally, the state cites *People* v. *Teicher*, 52 N.Y.2d 638, 422 N.E.2d 506, 439 N.Y.S.2d 846 (1981). As described by our Supreme Court in *Hufford*, "[i]n *Teicher*, the defendant, a dentist, was convicted of sexually abusing a police decoy whom he had drugged. The Court of Appeals upheld the conviction over the defendant's contention that the victim was not physically helpless because she was mentally aware although unable to control her body. Significantly, that court pointed out that the jury heard evidence that the victim was lifted to a standing position by the defendant, and that, under the circumstances, 'there may be a decrease

in the cerebral blood flow which could result in dizziness or even unconsciousness,' and that chest compression could compound the result, thereby leaving the question of the state of the victim's helplessness for the jury to decide." *State* v. *Hufford*, supra, 205 Conn. 398. Even if we were persuaded that we should revisit our Supreme Court's description of *Teicher*, which we are not, we note that, in the present case, there is no suggestion that the defendant in any manner impaired the complainant's capacity to communicate with him.

We reverse the defendant's conviction in this case because we are not persuaded that the state produced any credible evidence that the complainant was either unconscious or so uncommunicative that she was physically incapable of manifesting to the defendant her lack of consent to sexual intercourse at the time of the alleged sexual assault. Whatever other provision of our criminal code the defendant may have violated, the state did not prove that he committed the crimes for which he was put to trial.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty.

In this opinion the other judges concurred.