STATE OF CONNECTICUT *v.* ROBERT TINE
(AC 32509)

Gruendel, Beach and Schaller, Js.

Argued May 23—officially released August 14, 2012

*William B. Westcott*, for the appellant (defendant).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Robert Tine, appeals from the judgment of the trial court following a trial to the court. He was convicted of evading responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b) "by [General Statutes §] 14-107 (b)." He claims that there was insufficient evidence presented to establish that he was the operator of the motor vehicle in question, and thus the court violated his due process rights under the fifth and fourteenth amendments to the United States constitution by convicting him. We affirm the judgment of the trial court.

The following evidence is relevant to the defendant's appeal.[1] On or about July 29, 2009, between 3 and 4 p.m., Antonia Valentino's silver 1997 four door Saturn was struck by a white truck while the car was parked on the street in front of her home at 171 Winthrop Street in New Britain. At around 4 p.m. on that date, Valentino

---

[1] In its oral decision at the conclusion of the evidence, the court indicated that it generally credited the state's witnesses and discredited the testimony of the defense witnesses.

noticed that "it looked like there was a bag stuck to the side of [her] car," and upon closer inspection, she observed that "it was a gaping hole." Upon Valentino's request, a mechanic came to inspect the car. The mechanic was unable to move the vehicle. Valentino spoke with a neighbor, Daniel Suarez, who lived across the street. On July 29, 2009, Suarez was home playing a video game with his brother when at approximately 3:45 p.m. he heard "a bang from outside." When he looked out his window, he saw a white truck on the sidewalk very close to the passenger side of Valentino's car. He did not see the driver. Suarez observed the truck pull forward away from the car and then pull off the grass. It appeared to Suarez that the truck had hit the car, but he was not certain so he continued playing the video game. He subsequently heard Valentino screaming and went outside to tell her about the white truck that he had observed. He told Valentino that he did not want to talk to the police because he "[didn't] like cops" but agreed later to provide a statement to the police that provided his recollection of the incident. At trial, he identified the defendant's truck as the white truck he observed that day.

Valentino called the police at about 6 a.m. the following morning to report the incident, and Jared Barsaleau, an officer with the New Britain police department, responded to Valentino's home shortly thereafter. Barsaleau observed damage to the passenger side, front corner panel and fender of Valentino's car, as well as a hole in the car. He also observed tire tracks on the grassy area behind 81-83 Linwood Street, which borders Valentino's property, and observed that those tracks moved in a direction toward the roadway and across the sidewalk, which also led in the direction of where Valentino's car was parked. Valentino told Barsaleau that there was a remodeling project occurring at 81-83 Linwood Street and often there were vehicles coming

and going on the property. She also told him that her car had been parked in the same location for the past few days. Barsaleau determined that 81-83 Linwood Street was vacant and observed that it appeared that it was under construction or remodeling. He did not see any trucks on the property.

On August 6, 2009, Daniel McBride, a police officer with the New Britain police department, having been assigned to investigate the incident, went to Valentino's home to meet with her. He observed tire tracks on the lawn of 81-83 Linwood Street, which tracks ran directly toward Valentino's car in the area of the car that was damaged. He also observed scuffs on the front tire and white paint transfer "just to the front of the front tire on the fender" of Valentino's car. He further observed drivetrain damage to the car that appeared to make it inoperable. The damage to Valentino's car was estimated to be $1383.17.

On the same date, McBride inspected a white truck that was parked on the lawn of 81-83 Linwood Street and observed substantial damage to the right rear of the truck and black tire marks on the truck's bumper that may have been consistent with additional damage over damage from an accident. McBride spoke to the defendant, who stated that he was the owner of the white Chevy truck, that his truck was not involved in the incident and that he did not cause damage to Valentino's vehicle. The defendant told McBride that most of the damage to the truck had occurred during a previous accident in April, 2009.

The defendant was charged in a long form information with evading responsibility in violation of § 14-224 (b) "by [§] 14-107 (b)."[2] At a court trial on June 22, 24

---

[2] General Statutes § 14-107 (b) provides in relevant part: "Whenever there occurs a violation of section . . . 14-224 . . . proof of the registration number of any motor vehicle therein concerned shall be prima facie evidence in any criminal action . . . that the owner was the operator thereof . . . ."

and 25, 2010, the defendant maintained that neither he nor his truck was involved in the incident. The defendant testified at trial that he performed work at 81-83 Linwood Street on July 29, 2009, but that he arrived between 7:30 and 9 a.m., and left between 1 and 2:30 p.m. He presented witnesses who testified that he was driving a grey truck on the day of the incident.

The court found that the state proved beyond a reasonable doubt that the defendant was guilty of evading responsibility in the operation of a motor vehicle in violation of § 14-224 (b). The court sentenced the defendant to one year incarceration, execution suspended, and eighteen months probation with the following special conditions: restitution of $1388.17[3] to be paid in the amount of $200 per month and a $600 fine. This appeal followed.

The defendant claims that the record contains insufficient evidence to support the court's conclusion that the state met its burden of proof as to the element of identity pursuant to § 14-224 (b). Specifically, the defendant claims that the court erred in applying a statutory presumption pursuant to § 14-107 (b). We disagree.

"As a preliminary matter, we set forth the applicable standard of review. In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not

---

[3] The state's exhibit ten reflects a damage estimate of $1383.17, and at sentencing, the court ordered restitution in that amount. No one has raised an issue regarding the apparent discrepancy of $5 in the judgment file.

required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . .

"[An] appellate court's first task, in responding to a claim of evidentiary insufficiency, is to apply the traditional scope of review to the evidence. That requires that . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict. . . . We note that a claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at

trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

In order to establish that the defendant evaded responsibility in the operation of a motor vehicle in violation of § 14-224 (b), the state was required to prove beyond a reasonable doubt that the defendant was operating the motor vehicle.[4] Section 14-107 (b) provides in relevant part: "Whenever there occurs a violation of section . . . 14-224 . . . proof of the registration number of any motor vehicle therein concerned shall be prima facie evidence in any criminal action . . . that the owner was the operator thereof . . . ."

In the present case, the defendant claims that there was insufficient evidence to establish beyond a reasonable doubt that he was the person who caused damage to Valentino's car. Specifically, the defendant argues

---

[4] In addition to proving that (1) the defendant was operating a motor vehicle, the state was required to prove that "(2) the defendant was knowingly involved in an accident and (3) the accident caused physical injury to any other person or damage to property. . . . Once those predicate elements were established, the state could prove a violation of § 14-224 (b) if it proved that the defendant failed to fulfill any one or more of the following duties required of him under the statute: (4) that the defendant failed to stop at once and render such assistance as may have been needed; or (5) unless there was evidence that the defendant was unable, for any reason or cause, to provide the statutorily required information at the scene, that the defendant failed to give his name, address, operator's license number and registration number to the person injured or to the owner of the damaged property, or to any officer or witness to the accident; or (6) if there was evidence that the defendant was unable, for any reason or cause, to provide the statutorily required information at the scene, that the defendant failed to report immediately the physical injury or property damage to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and to give his name, address, operator's license number and registration number together with the location and circumstances of the accident causing the physical injury or property damage." (Citation omitted.) *State* v. *Goodspeed*, 107 Conn. App. 717, 725–26, 946 A.2d 312, cert. denied, 287 Conn. 920, 951 A.2d 570 (2008).

that the court "clearly established the element of operation through [§ 14-107 (b)] alone" and further contends that § 14-107 (b) illegally transfers the burden from the state to the defendant to prove one of the elements of § 14-224 (b). In 1963, the Appellate Division of the Circuit Court rejected a claim that § 14-107 unconstitutionally shifted the burden of proof from the state to the defendant. The court in *State* v. *Schonrog*, 2 Conn. Cir. Ct. 239, 245, 197 A.2d 546 (1963), stated: "The introduction of evidence sufficient to constitute prima facie evidence of operation under § 14-107 does not, of itself, constitute guilt of a violation of the statute under which the defendant was being prosecuted, as suggested by the defendant. Section 14-107 merely provides that if the registration number of the owner of the motor vehicle concerned is proved, the court shall have the right to presume the owner was the operator."

In 1996, our Supreme Court concluded that a trial court's jury instructions that the presumptions in General Statutes § 53-202 (d), (e) and (g) were mandatory presumptions violated the due process clause of the federal constitution. *State* v. *Gerardi*, 237 Conn. 348, 357–61, 677 A.2d 937 (1996). The defendant in that case was convicted of violating § 53-202 (c), which prohibited possessing or using a machine gun for an offensive or aggressive purpose. Id., 349–51. Section 53-202 (d) provided in relevant part that "[t]he possession or use of a machine gun shall be presumed to be for an offensive or aggressive purpose" under certain circumstances. Section 53-202 (e) provided in relevant part that "[t]he presence of a machine gun in any room, boat or vehicle shall be presumptive evidence of the possession or use of the machine gun by each person occupying such room, boat or vehicle." Section 53-202 (g) provided in relevant part that "[a]ny person who fails to register any gun as required hereby shall be presumed to possess the same for an offensive or

aggressive purpose." In order to preserve the constitutionality of these statutory presumptions, our Supreme Court construed "shall" to mean "may" so that the provisions could be applied constitutionally as permissive inferences. *State* v. *Gerardi*, supra, 357–61. The court reasoned that, rather than intending that the presumptions be mandatory, "it [was] more likely that the legislature intended that a jury may infer [the relevant statutory element] if the statutory predicate fact together with appropriate facts are sufficient to render the inference rational." Id., 359–60. The court concluded: "In sum, the jury must be instructed that it may infer facts only upon finding sufficient predicate statutory and nonstatutory facts and circumstances that are rationally connected with the ultimate facts inferred." Id., 361.

In the present case, the court did not expressly state how, if at all, it applied the presumption in § 14-107 (b). Section 14-107 (b) clearly operated, however, as a permissive interference. We do not presume that the court erred in applying the law. See *State* v. *Tocco*, 120 Conn. App. 768, 781 n.5, 993 A.2d 989 ("[t]his court does not presume error on the part of the trial court; error must be demonstrated by an appellant on the basis of an adequate record"), cert. denied, 297 Conn. 917, 996 A.2d 279 (2010). The record does not reveal that the court relieved the state of its burden of proof. Under the facts and circumstances of the present case, the court rationally inferred that the defendant was the operator of the white truck. The court weighed the credibility of the witnesses, namely, the defendant, Juan Feliciano, who worked at 81-83 Linwood Street on July 29, 2009, and Eugene Kirouac, the then owner of the property. The court stated: "The court does not credit the defendant's testimony or that of his witnesses, Juan Feliciano and Eugene Kirouac, that on July 29, 2009, the defendant was driving a grey truck which he was using to remove oil from the oil tanks at 81-83 Linwood

Street and that the defendant's white truck was not there the entire day." The court noted the contradictory nature of the witnesses' testimony and found that "[i]t is most probative that . . . Feliciano or . . . Kirouac and even the defendant never mentioned to any police officer that the defendant was driving a grey truck on the day of the accident." Additionally, the defendant testified that he was working on the day Valentino's car was damaged. It was undisputed that the defendant frequently drove the white truck. Tracks led from the area where the defendant parked his truck to Valentino's car. No evidence was presented that others operated the truck. There were many facts before the court, including those that we have set forth, which reasonably corroborate the permissive inference that the defendant was the operator of the white truck that was parked at 81-83 Linwood Street on the day in question.

The court properly set forth the elements of § 14-224 (b), considered the evidence before it, assessed the credibility of the witnesses and concluded that the state established each element of the offense beyond a reasonable doubt. That the evidence was circumstantial, rather than direct, does not undermine the court's conclusions. "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Butler*, supra, 296 Conn. 77. "Nothing in our law is more elementary than that the trier is the final judge of the credibility of the witnesses and of the weight to be accorded their testimony." *State* v. *Lounsbury*, 2 Conn. Cir. Ct. 329, 332, 198 A.2d 719 (1963).

The judgment is affirmed.

In this opinion the other judges concurred.