STATE OF CONNECTICUT *v.* DOUGLAS F.*
(AC 34322)

Gruendel, Beach and Sullivan, Js.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued May 16—officially released August 27, 2013

*David R. Gronbach*, with whom, on the brief, was *Earl Ormond*, for the appellant (defendant).

*Nancy L. Walker*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Amy L. Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Douglas F., appeals from the judgment of conviction, rendered after a trial to the court, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),

and two counts of risk of injury to a child, in violation of General Statutes § 53-21 (a) (2). The defendant claims on appeal that (1) the state presented insufficient evidence at trial to support his conviction on all counts, (2) the court abused its discretion when it precluded the defense from questioning two witnesses as to whether the victim's mother stated in 2003 that she had lied to the police, and (3) the court deprived the defendant of his constitutional right to due process of law when it questioned the defendant during his testimony. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. The defendant is the father of the victim, who was born in December, 2002. The defendant and the victim's mother had an episodic relationship; the couple separated when the victim was three months old and thereafter the victim lived with his mother. The defendant played an irregular part in the victim's life until July, 2008, when the defendant reunited with the victim's mother and the two moved in together. During this period of reconciliation, the victim attended school during the day, and when at home, was supervised primarily by his mother, the defendant or the defendant's mother. The renewed effort at a relationship proved futile, however, and on December 6, 2008, after a fight with the victim's mother, the defendant moved out. Thereafter the victim continued to live with his mother.

On February 27, 2009, the victim, who was six years old at the time, told his mother about an incident that occurred while he was under the care of the defendant. He stated that the defendant requested that they take a shower together because they both were dirty. Then, as articulated by the court, "the defendant intentionally forced [the victim] to perform fellatio on him in the shower at the apartment that they were living in . . . . The defendant intentionally forced [the victim's] head

towards his penis, placed his penis inside [the victim's] mouth, and ejaculated in [the victim's] mouth. After he ejaculated, the defendant then intentionally placed [the victim's] penis inside his mouth." After detailing this incident to his mother, his mother informed the Naugatuck police of the defendant's conduct. The police then contacted the Department of Children and Families, who arranged a meeting with Jessica Alejandro, a clinician at Wellpath Behavioral Health in Waterbury, to conduct a videotaped forensic interview to determine whether the victim needed physical and/or mental health treatment. The court found that the assault occurred sometime between November 1, 2008, and December 24, 2008, and the victim was either five years old or had just turned six.

On March 5, 2009, the defendant was charged with three counts of sexual assault in the first degree in violation of § 53a-70, and three counts of risk of injury/ impairing the morals of a child in violation of § 53-21. The defendant elected a trial to the court on all charges. The state filed a long form substitute information reducing the defendant's charges to two counts of sexual assault in the first degree in violation of § 53a-70 (a) (2), and two counts of risk of injury to a child in violation of § 53-21 (a) (2).[1] On October 26, 2011, the court found the defendant guilty on all counts, and accordingly, rendered a judgment of conviction. The court sentenced the defendant to a total effective sentence of ten years imprisonment, with twelve years of special parole. This appeal followed.

[1] To be guilty of sexual assault in the first degree under § 53a-70 (a) (2), a person must "[engage] in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person." To be guilty of risk of injury to a child under § 53-21 (a) (2), a person must have "contact with the intimate parts . . . of a child under the age of sixteen years" or subject "a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child."

## I

The defendant first claims that the state presented insufficient evidence at trial to support his conviction of sexual assault in the first degree and risk of injury to a child. In particular, the defendant asserts that the state's evidence was insufficient because of inconsistencies within the testimony of the state's main witness, the victim, and because essential elements of the crime were allegedly refuted by the witnesses for the defendant. We disagree.

In reviewing a claim of insufficient evidence, this court applies a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom, the trier of fact reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that support's the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Tine*, 137 Conn. App. 483, 487–88, 48 A.3d 722, cert. denied, 307 Conn. 919, 54 A.3d 562 (2012).

The defendant's trial was a credibility contest. There was no physical evidence of the assault; the state's case rested upon the testimony of the victim, who was nine years old at the time that he testified, bolstered by the videotape of his 2009 forensic interview and the testimony of ten others, including his mother. The defense consisted of the testimony of the defendant, the defendant's mother, his girlfriend, and that of a psychologist, who provided an expert opinion on the nature of a child victim's recollection. Upon rendering its judgment of conviction, the court stated on the

record that it determined the victim's testimony "to be highly credible," and that the victim's testimony "belie[d] any conclusion that these memories [were] false or that [the victim's mother] forced [the victim] to make up these allegations." Furthermore, the court determined: "The court does not credit much of the defendant's testimony. The court does not credit much of the testimony of the defendant's mother." The court found that the sexual assault detailed by the victim, credited as true, established all of the elements necessary to convict the defendant under both § 53a-70 (a) (2) and § 53-21 (a) (2), and rendered its judgment accordingly.

The defendant asserts that his conviction should be reversed because "no reasonable view of the evidence could support [a] conviction for sexual assault [in the first degree] and risk of injury." In particular, the defendant contends, various inconsistencies within the victim's testimony, along with evidence presented through witnesses for the defense, should have made the victim's testimony improbable and unconvincing, and as a result the state failed to establish the defendant's guilt beyond a reasonable doubt.

Logically, to establish a basis for reversal, the defendant is asking this court to first, assess the merits of a witness' testimony in order to conclude that it was not credible, and subsequently, to conclude that the state lacked sufficient evidence as a result. This we may not do. "As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . [W]e must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor, and attitude. . . . Credibility determinations are the exclusive province of the . . . fact finder, which we refuse to disturb." (Citation omitted; internal quotation marks omitted.) *State* v. *Gene C.*, 140 Conn. App. 241, 246–47,

57 A.3d 885, cert. denied, 308 Conn. 928, 64 A.3d 120 (2013). Here, the court acknowledged in its decision that the victim's testimony contained inconsistencies, but nevertheless found these inconsistencies to be "relatively minor" and to "not undermine the veracity of the core of [the victim's] in court testimony." "It is well settled . . . that [e]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . Rather, the [finder of fact] [weighs] the conflicting evidence and . . . can decide what—all, none, or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Ocasio*, 140 Conn. App. 113, 119 n.7, 58 A.3d 339, cert. denied, 308 Conn. 909, 61 A.3d 531 (2013). After witnessing the conduct, demeanor, and attitude of all of the witnesses, the court found the victim's in-court testimony to be "highly credible," while in comparison, it "did not credit much of the defendant's testimony" or that of the defendant's mother. It is not within the purview of this court to undermine that assessment.[2]

The defendant argues that it was unreasonable for the court to rely solely on the victim's inconsistent

---

[2] The defendant cites *State* v. *Cobbs*, 203 Conn. 4, 11, 522 A.2d 1229 (1987), to assert that we will reverse a judgment "where the state's evidence is improbable and unconvincing . . . ." The defendant, however, has mischaracterized the holding of *Cobbs*. In *Cobbs*, the Supreme Court held the evidence insufficient to sustain a conviction for felony murder because the state failed to produce any evidence that the murder occurred in the course of and in furtherance of the underlying felony—other than that the two crimes involved the same participants and victim—and therefore the record revealed "absolutely no evidence from which a trier of fact could reasonably have concluded, without resort to speculation or conjecture, that this element of the crime was established." Id., 13. In assessing this record, however, the court did "not weigh the evidence nor resolve questions of credibility of witnesses" but instead looked "to that evidence and the reasonable inferences therefrom which support the findings of the trial court." Id., 6–7. Therefore, contrary to the assertion of the defendant in the present case, at issue in *Cobbs* was not whether the evidence itself was improbable and unconvincing, but whether the defendant's guilt was improbable and unconvincing in light of the evidence presented in that case.

testimony for the details of the assault. As the court chose to credit the testimony of the victim, however, "[i]t matters little that the state's case consisted primarily of that testimony or that it lacked physical evidence. Our Supreme Court has recognized that a [fact-finder] reasonably can find a defendant guilty of sexual assault on the basis of the victim's testimony alone."[3] *State v. Gene C.*, supra, 140 Conn. App. 247; see also *State v. George A.*, 308 Conn. 274, 285, 63 A.3d 918 (2013) (trial court specifically credited victim's testimony, which established beyond reasonable doubt that defendant had violated all elements of crime); *State v. Caracoglia*, 95 Conn. App. 95, 128, 895 A.2d 810 (testimony of one credible witness is sufficient evidence to convict one accused of a crime), cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006). The evidence at trial was sufficient to convict the defendant because the testimony of the victim established the elements necessary to support conviction of two counts of sexual assault in the first degree and two counts of risk of injury to a child.[4]

[3] The defendant also analogizes the present case to *State v. Ritrovato*, 280 Conn. 36, 57, 905 A.2d 1079 (2006), in which the Supreme Court observed that "a sexual assault case lacking physical evidence is not particularly strong, especially when the victim is a minor." Reliance on that case, in which the issue was prejudicial exclusion of evidence, is misplaced. In *Ritrovato*, the defendant asserted harmful error because admission of certain evidence, which had been excluded by the trial court, *would have* undermined the critical testimony of the victim. Id., 58. Unlike in *Ritrovato*, here the defendant is not asserting that he was prevented from undermining the victim's testimony. Instead, here the defendant is asserting that he was successful in undermining the victim's testimony, but that the trial court failed to agree.

[4] The defendant relies on our holding in *State v. Fourtin*, 118 Conn. App. 43, 48, 982 A.2d 261 (2009), aff'd, 307 Conn. 186, 52 A.3d 674 (2012), to assert that this court may reverse a conviction if it is "not persuaded that the state produced any credible evidence" to satisfy its burden. The defendant's reliance on this case is misplaced. In *Fourtin*, we held that the state failed to produce sufficient evidence to support a conviction under General Statutes § 53a-65 (6) because the state's evidence established that the victim was unable to communicate with various doctors during examinations, but failed to establish that the victim was unable to communicate at the actual time of the assault—an element of the crime necessary for conviction. Id., 52–53.

## II

We next address the defendant's claim that the court committed reversible error when it refused to admit, as a prior inconsistent statement, testimony from two witnesses that the victim's mother stated in 2003 that she lied to the police regarding a different incident. We disagree.

It is well established that this court affords great deference to a trial court's evidentiary rulings. *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998). "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . This deferential standard is applicable to evidentiary questions involving hearsay, generally . . . and to questions relating to prior consistent statements, specifically." (Citations omitted; internal quotation marks omitted.) Id., 801–802.

The record reveals the following additional facts relevant to the resolution of this claim. The defendant was arrested in 2003 after a report made by the victim's mother to police. The record indicates that the victim's mother never testified on direct examination about this arrest of the defendant in 2003. She was not questioned about this 2003 arrest until she was cross-examined by

Here, unlike in *Fourtin*, because the court credited the victim's "ability in court and during the forensic interview to describe the assault in specific detail," the state provided credible evidence to support the necessary elements of the crime of which the defendant was convicted.

the defense, when defense counsel asked, "[O]n the date that you broke up [in 2003] did you call the police and have [the defendant] arrested?" The witness answered in the affirmative. Upon objection by the prosecutor, the trial court admitted this testimony as relevant evidence of the "stormy nature of their relationship and the fact that she made previous complaints to the police about him . . . six years before." Defense counsel next asked: "Did you tell [the defendant] that you had lied to the police officers and that if he came home to you, you would drop the charges?" The following colloquy then occurred among both counsel and the court:

"[Prosecutor]: I object based on that being hearsay. It's an out of court statement that she made.

"The Court: Sustained.

"[Defense Counsel]: It's her statement.

"The Court: I understand that.

"[Defense Counsel]: And I'm going to impeach it when she says no, with the court's permission.

"The Court: It's still hearsay.

"[Defense Counsel]: I understand."

Defense counsel then moved on to a different subject.

Later in the trial, defense counsel again attempted to introduce the statement, this time through direct examination of the defendant. The record indicates that defense counsel had anticipated an objection, because there was no question and no objection before counsel sought the permission of the court. The following exchange occurred:

"[Defense Counsel]: How long after that were you arrested?

"[Defendant]: About a week.

"[Defense Counsel]: Did [the victim's mother] contact you to discuss the situation?

"[Defendant]: Afterwards, yes.

"[Defense Counsel]: I'm going to claim it as I asked [the victim's mother] whether or not about lying to the police, she answered in the negative. It goes to an inconsistent statement. I know it doesn't come in for the proof.

"The Court: Well, it's extrinsic evidence of her character for truthfulness, correct?

"[Defense Counsel]: It's an inconsistent statement in her testimony. I asked her specifically, whether or not she said that she had lied to the police and she was going to drop the charges if he came back and stayed with her. And she said, no.

"The Court: But you're offering it for the truth. You're offering it for whether or not she lied to the police.

"[Defense Counsel]: If I can get it in for the truth, it's fine. If I can't, then as a prior inconsistent statement which was what she testified in court. I'd like to get it in for one or the other.

"The Court: How do I know whether or not it's a lie?

"[Defense Counsel]: Only by him answering it.

"The Court: It's going to be his opinion on whether or not it was a lie?

"[Defense Counsel]: No. He's going to say what I said. I lied to the police and if you come back, I'll go tell them that, but you have to stay with me. She told him it was a lie.

"The Court: The objection is sustained."

The record indicates that the victim's mother was not allowed to answer defense counsel's question dur-

ing her testimony, and therefore she did not testify as to whether she made this alleged statement to the defendant after his arrest in 2003. The record also indicates that defense counsel never asked the victim's mother if she did lie to the police in 2003.

The defendant argues that both his initial question to the victim's mother and his question to the defendant should have been admitted as evidence of a prior inconsistent statement by the victim's mother under Conn. Code of Evid. § 6-10 (a).[5] Section 6-10 (a) of the Connecticut Code of Evidence provides: "The credibility of a witness may be impeached by evidence of a prior inconsistent statement made by the witness." Nevertheless, "[i]mpeachment of a witness by the use of prior inconsistent statement is proper only if the two statements are in fact inconsistent. . . . Moreover, the inconsistency must be *substantial* and relate to a *material matter*." (Citations omitted; emphasis in original.) *State* v. *Richardson*, 214 Conn. 752, 763, 574 A.2d 182 (1990). While a finding of a statement's inconsistency "is not limited to cases in which diametrically opposed assertions have been made"; *State* v. *Whelan*, 200 Conn. 743, 749 n.4, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S.

---

[5] In his principal brief, the defendant contends only that the proffered statement should have been admitted as a prior inconsistent statement under § 6-10 of the Connecticut Code of Evidence, and does not argue whether the proffered statement was hearsay. The defendant argues in his reply brief, for the first time, that this statement was not hearsay because it was offered to show the effect on the hearer. We decline to entertain this argument because it was not raised in the defendant's main brief, and as a result is considered abandoned. See, e.g., *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 59, 12 A.3d 885 (2011) ("the plaintiffs . . . have abandoned their claims with respect to the individual defendants by raising them for the first time in their reply brief, which is an impermissible practice"); *State* v. *Richardson*, 291 Conn. 426, 431, 969 A.2d 166 (2009) ("[b]ecause the defendant failed to raise this issue in his main brief, it is abandoned"); *State* v. *Lopez*, 280 Conn. 779, 816 n.25, 911 A.2d 1099 (2007) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" [internal quotation marks omitted]).

Ct. 597, 93 L. Ed. 2d. 598 (1986); the determination of whether an inconsistency exists lies within the discretion of the court. *State* v. *Avis*, 209 Conn. 290, 302, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989).

We find that both discretionary rulings of the trial court were proper because the proffered statement by the defendant never qualified as evidence of a prior inconsistent statement by the victim's mother under § 6-10 (a) of the Connecticut Code of Evidence. The victim's mother did not address the defendant's 2003 arrest on direct examination; furthermore, while she stated on cross-examination that she made a complaint that led to the defendant's arrest in 2003, she did not testify as to why she called the police or to whether her report was a lie. As a result, the proffered statement by the defendant was not actually inconsistent with any testimony by the victim's mother on direct examination, or even during her testimony as a whole, and thus the proffered statement was not a "prior inconsistent statement" as required for admission under § 6-10 (a). For these reasons, we cannot hold that the court's unwillingness to allow the defense to pursue such a line of questioning was an abuse of discretion.[6] See *State* v. *Avis*, supra, 290 Conn. 303 ("[w]hen [the witness'] testimony is viewed in its entirety, it is not clear that his statements were inconsistent, and the trial court accordingly did not abuse its discretion in finding no inconsistency").

III

As his final claim, the defendant asserts that he was denied a fair trial when the trial judge questioned him

---

[6] In fact, defense counsel appeared to concede that the statement—that the victim's mother had told the defendant that she had lied to the police—was hearsay, and further, his argument that "I'm going to impeach it when she says no" indicates an awareness that the question's value for impeachment would arise only after the witness answered. We cannot say that the court's decision to exclude this question was a manifest abuse of its discretion.

for "the clear purpose" of discrediting his testimony. In particular, the defendant claims that "the trial court crossed the line from impartial moderator to an advocate on behalf of the prosecution . . . [because] he led defendant's testimony, questioned his credibility, and then berated him for his conduct." Because the defendant failed to raise any objection concerning these matters before the trial court, we review this claim at the defendant's request pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1985).

To prevail under *Golding*, the defendant must establish that "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived he defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. Here, the defendant has satisfied the first two prongs of *Golding* because the record is adequate for review and the defendant's claim is one of constitutional magnitude. See *State* v. *Pharr*, 44 Conn. App. 561, 568, 691 A.2d 1081 (1997) ("[d]ue process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm" [internal quotation marks omitted]). Nevertheless, we conclude that the defendant cannot prevail on his claim of judicial misconduct under the third prong of *Golding*.

In order to ensure the protection of a criminal defendant's due process rights, "the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *State* v. *Harris*, 28 Conn. App. 474, 479–80, 612 A.2d 123, cert. denied 233 Conn. 926,

614 A.2d 828 (1992). Nevertheless, "when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts." (Internal quotation marks omitted.) *State* v. *Fernandez*, 198 Conn. 1, 11, 501 A.2d 1195 (1985). "A court's questioning of a witness is not necessarily improper, even if it draws attention to the strengths or weaknesses of a party's case." *State* v. *Gracewski*, 61 Conn. App. 726, 735, 767 A.2d 173 (2001). Instead, to rise to the level of a constitutional violation, such an intervention "would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the [finder of fact] or lack of the appearance of a neutral judge conducting a fair trial." (Internal quotation marks omitted.) *State* v. *Peloso*, 109 Conn. App. 477, 491, 952 A.2d 825 (2008). "[T]he jury has a natural tendency to look to the trial judge for guidance. Thus, the court must take great caution not to intervene in such a manner that it implies to the jury the result the court supposedly desires. . . . In the case before us, however, the judge and fact finder were one and the same. Accordingly, any appearance of partiality in the court's conduct carried less danger of prejudicing the defendant than it would have in a trial." (Citation omitted.) Id., 493.

The defendant challenges two instances of judicial intervention in which the court questioned the defendant over the role his son played in his decision to move out, and the means by which he ensured his son's safety and welfare while he was living elsewhere. The defendant asserts that this questioning "mischaracterized the defendant's testimony" and "used the admission it obtained by leading the defendant to attack his

credibility," therefore "cross[ing] the line from impartial moderator to an advocate on behalf of the prosecution." We disagree.

The record indicates that the court told the defendant that it pursued its line of questioning "to assess [the defendant's] credibility [and] to help me gauge whether or not, in fact, [the defendant] went back over to the apartment some time shortly after December 6." The court further qualified that it would not "take the fact that he didn't pay child support and say he, therefore, must have committed a sexual assault. I would never do that. That wouldn't be a proper use of the evidence." Contrary to the defendant's assertions, the record does not indicate that the trial court berated the defendant for his conduct or personally attacked his credibility; instead, the record indicates that the contested questioning was pursued to clarify the defendant's testimony and to understand his concern for his son. This contested questioning lacked any impermissible signals of siding with the prosecution and does not raise concerns that the defendant did not receive a fair trial. Accordingly, the defendant has failed to satisfy *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.